UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In The Matters Of:

Bowles Sub Parcel C, LLC,                       Civil No.14-2884(DSD)

       Appellants,

v.

Wells Fargo Bank, N.A., as Trustee,

       Appellee.

_____

Fenton Sub Parcel C, LLC,                       Civil No. 14-2894(DSD)

       Appellants,

v.                                              **ORDER**

Wells Fargo Bank, N.A., as Trustee,

       Appellee.

_____

    This matter is before the court upon the appeal by appellants Bowles Sub Parcel C, LLC, and Fenton Sub Parcel C, LLC, (Debtors) of a final judgment by United States Bankruptcy Judge Kathleen H. Sanburg.  Based on a review of the record, file, and proceedings herein, and for the following reasons, the court affirms.

**BACKGROUND**

    This case arises out of the bankruptcy court's May 30, 2014, order awarding post-petition default interest as set forth in the parties' underlying loan documents.  The background facts of this matter are not in dispute and the court will recite only those

facts relevant to the narrow issue presented.

Debtors own several parcels of real estate in Dakota and Hennepin Counties. Appellee Wells Fargo Bank, N.A., is the trustee for registered holders of security interests in that real estate.[1] Debtors are indebted to the Trust pursuant to a restated promissory note secured by priority liens and security interests in the real estate.

In April 2004, Debtors and the Trust executed a promissory note to secure the loan in the amount of $15,654,000.00 (Note). App. at APP107. Debtors defaulted on the note in April 2012. As a result, and consistent with the Note, the loan maturity date was accelerated and the total amount of indebtedness became immediately due and owing. The Note provides for interest at a rate of 5.04%, plus default interest at 5%. Id. at APP107, APP111. In the Note, Debtors acknowledged "that it would be extremely difficult or impracticable to determine [the Trust's] actual damages resulting from any late payment or default, and such late charges and default interest are reasonable estimates of those damages and do not constitute a penalty." Id. at APP111. The Note states, however, that "if such increased rate of interest may not be collected under

---

[1] On April 20, 2004, the original note holders assigned the loans to Wells Fargo as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-LN2 (Trust), by and through Torchlight Loan Services, LLC.

applicable law," then the default interest will instead be the maximum rate allowed under applicable law. Id.

On May 8, 2012, Debtors filed for bankruptcy protection under Chapter 11, triggered at least in part by the loan guarantor's own bankruptcy filing in 2011. There is no dispute that the Trust is an oversecured creditor and party-in-interest in the bankruptcy case.

On August 17, 2012, the Trust filed a timely proof of claim seeking $15,363,756.21, which includes $13,137,075.50 in principal plus penalties, fees, and interest. On March 4, 2013, the bankruptcy court allowed the Trust's pre-petition claim in the amount of $13,852,203.95.[2] On October 1, 2013, the Trust filed an application for post-petition additions to its secured claim under 11 U.S.C. § 506(b). Among other expenses, costs, and charges, the Trust requested post-petition default interest in the amount of $660,502.96. The bankruptcy court allowed the full amount of post-petition default interest, in addition to other expenses and costs. ECF No. 37-1, at 2. Debtors now appeal that decision, arguing

---

[2] Debtors appealed the award of pre-petition default interest to this court, arguing that the provision was unenforceable under Minnesota law. See In re Bowles Sub Parcel A, LLC, Nos. 13-1013, 13-1017, 13-1020, 13-1021, 13-1022, 2013 WL 6500130 (D. Minn. Dec. 11, 2013). The court upheld the bankruptcy court's decision, concluding that the default interest provision was allowable under Minnesota law and therefore valid and enforceable. Id. at *9. Debtors appealed that decision to the Eighth Circuit, which affirmed. See In re Bowles Sub Parcel A, LLC, 792 F.3d 897 (8th Cir. 2015).

that, as applied post-petition, the default interest provision is unenforceable.[3]

## Discussion

The court has jurisdiction of this appeal under 28 U.S.C. § 158(a)(1). When an appellant elects to appeal the final judgment of the bankruptcy court to the district court, the district court "acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error." In re Falcon Prods., Inc., 497 F.3d 838, 840–41 (8th Cir. 2007) (citation and internal quotation marks omitted). "The district court may not make its own independent factual findings." Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987). Additionally, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination." Id. (citations omitted).

The narrow issue presented is whether the bankruptcy court erred in concluding that the default interest rate, applied post-

---

[3] The appeal regarding pre-petition interest was still pending when Debtors filed the instant appeal regarding post-petition interest. Because the parties agreed that the Eighth Circuit's decision would inform the outcome here, the court informally stayed the proceedings until that appeal concluded.

petition, is presumptively valid and enforceable.

## I. Presumption of Allowability

The bankruptcy court, in concluding that the Note's default interest provision applies to post- as well as pre-petition interest, determined that the provision benefits from a presumption of allowability. See App. at APP241. Debtors urge the court to reject that determination and instead adopt the view that the default interest provision is not in fact interest, but instead a penalty that must satisfy a test of reasonableness. The court disagrees.

As the bankruptcy court correctly noted, courts considering this very issue have determined that the contract rate for default interest is presumed to be allowable.[4] See Gen. Elec. Capital Corp. v. Future Media Prods., Inc., 547 F.3d 956, 961 (9th Cir. 2008); Matter of Southland Corp., 160 F.3d 1054, 1059-60 (5th Cir. 1998); In the Matter of Terry Ltd. P'ship, 27 F.3d 241, 243 (7th Cir. 1994); In the Matter of Laymon, 958 F.2d 72, 75 (5th Cir. 1992). A party can rebut the presumption of allowability in two ways: (1) by establishing that the default rate is unenforceable under state law, or (2) by demonstrating that equitable considerations demand that the default rate not be applied. See Gen. Elec. Capital Corp., 547 F.3d at 961 ("The bankruptcy court

---

[4] The Eighth Circuit has yet to address this issue in the context of post-petition interest.

should apply a presumption of allowability for the contracted for default rate, provided that the rate is not unenforceable under applicable nonbankruptcy law."); Terry, 27 F.3d at 243 (recognizing the general rule that there is a "presumption in favor of the contract rate subject to rebuttal based upon equitable considerations"); Laymon, 958 F.2d at 75 (indicating that prior to the enactment of the bankruptcy code, courts applied the contract rate if the default rate would not "produce an inequitable or unconscionable result, so as to require disallowance thereof"). Debtors have failed to satisfy either condition.

A. **Enforceability Under State Law**

The bankruptcy court found that the default interest rate, as applied to post-petition interest, was appropriate and therefore enforceable under Minnesota law. App. at APP241. Debtors argue that in making that determination, the bankruptcy court improperly relied on decisions assessing pre-petition default interest rates. At oral argument, however, Debtors acknowledged that the then-pending appeal regarding pre-petition interest would inform the court's decision as to post-petition interest. Hr'g Tr. at 5. As noted, the Eighth Circuit determined that the provision is enforceable under Minnesota law. In re Bowles Sub Parcel A, LLC, 792 F.3d at 903. Debtors have not persuasively argued that the outcome should differ now that post- rather than pre-petition interest is at issue. Accordingly, the court will not revisit that

determination.

## B. Equitable Considerations

The presumption of validity of a default interest rate may also be rebutted if the equities weigh against its enforcement. Terry, 27 F.3d at 243; see also Laymon, 958 F.2d 72 (noting that courts use a flexible approach that recognizes situations where the default rate would produce an inequitable or unconscionable result). An inspection of the equities of this case reveals that Debtors' challenge to the default interest rate falls short.

Courts should modify contract rates based on the equities of a case sparingly. See In re 785 Partners LLC, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012). When determining whether there are equitable reasons to not enforce the default interest rate, courts consider a number of factors, including (1) the difference between the default and nondefault rates, (2) the reasonableness of "the differential between the rates," (3) whether enforcement of the higher rate will do injustice to the concept of equitable distribution of the estate's assets to other creditors, and (4) the purpose of the higher interest rate. In re Johnson, 184 B.R. 570, 573 (Bankr. D. Minn. 1995).

Here, there appear to be no equitable concerns that rebut the presumption of allowability. First, courts look to the post-default interest rate itself. Terry indicates that if a post-default rate is so high that it is uncommon in the market, the presumption may

7

be rebutted.  Terry, 27 F.3d at 244.  Debtors have failed to establish that the 10.04% post-default rate is higher than rates typically found in the market.

Parties may also overcome the presumption by comparing the non-default rate and the post-default rate.  Johnson, 184 B.R. at 573. Debtors argue that the default interest rate of 5% is inequitable because, when added to the non-default interest rate of 5.04%, the total post-default rate is 10.04%, or nearly twice the non-default rate.  However, courts have recognized that "[r]elying on the percentage increase is unpersuasive since ...  an increase from 1% to 2% reflects a 100% increase."  785 Partners, 470 B.R. at 135 n.7. Instead of focusing on the percentage increase, the focus should be on the "spread" between the pre-default and post-default rates. Id.; In re Trinity Meadows Raceway, Inc., 252 B.R. 660, 668-69 (Bankr. N.D. Tex. 2000) (addressing "the spread between the contract rate and the default rate").

Here, the pre-default rate is 5.04% and the post-default rate is 10.04%, resulting in a spread of 5%.  Courts have found that this spread does not raise equitable concerns.  See, e.g., 785 Partners, 470 B.R. at 135 (upholding default rate of 10% where the non-default rate was 5%); In re Clifftondale Oaks, LLC, 357 B.R. 883 (Bankr. N.D. Ga. 2006) (finding a 5% spread reasonable); In re Route One West Windsor LP, 225 B.R. 76, 92 (Bankr. D.N.J. 1998) (upholding 8% spread); In re Liberty Warehouse Assocs. LP, 220 B.R. 546, 552

(Bankr. S.D.N.Y. 1998) (upholding an 8.8% spread); In re White, 88 B.R. 494, 498 (Bankr. D. Mass. 1988) (affirming a default interest rate of 19.25% where non-default rate was 14.25%). As a result, the court finds the bankruptcy court correctly determined that the 5% spread is not so high as to raise equitable concerns.[5] The court therefore concludes that the bankruptcy court correctly determined that Debtors did not rebut the presumption of allowability and that the interest rates set forth in the Note apply.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that the judgment of the bankruptcy court is affirmed in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 25, 2015

                                      s/David S. Doty
                                      David S. Doty, Judge
                                      United States District Court

---

[5]  Further, the parties appear to agree that enforcement of the default rate will not harm other creditors. Thus, the court is not concerned that there are larger equitable concerns at play.